## ELI WILSON *v.* THE STATE.

1. CRIMINAL LAW. *Affidavit for continuance.* When the defendant goes into trial voluntarily and makes no application for continuance until after the jury is sworn, an affidavit to the effect that he was surprised on account of the absence of a witness is not good, the prisoner giving no excuse for entering on the trial and not swearing that he believed the witness was in attendance, or that he did not know he was absent, though the witness be properly summoned.

2. SAME. *Jury misconduct of. What not.* The mere fact that the jury were kept and took their meals at the house of a person who aided the

Wilson *v.* The State.

prosecution in selecting the jury, when no tampering with them is shown, or any fact showing intercourse by him with the jury is no ground for setting aside their verdict.

3. SAME. *Horse stealing. Charge of court:* Where a defendant has been convicted at a former term of the court of horse stealing, and his punishment commuted from death to imprisonment, and a new trial is granted, it is not error upon a subsequent trial for the court to charge the jury that they have the power to commute the punishment, the former verdict is no bar to a different punishment by a subsequent verdict, the crime being one indivisable offense, a new trial is tried by a second jury as if there had been no previous trial.

Case cited: Turner *v.* The State, 3 Heis, 452.

FROM SEVIER.

From the Circuit Court.    JAMES H. RANDOLPH, Judge.

ATTORNEY-GENERAL HEISKELL for the State.

No brief for defendant.

DEADERICK, J., delivered the opinion of the court.

The plaintiff in error was convicted in the Circuit Court of Sevier county (the venue having been changed from Jefferson to Sevier county), at March Term, 1872, of horse stealing, and sentenced to ten years imprisonment in the penitentiary, the verdict of the jury being that they find the defendant "guilty in manner and form as charged in the indictment, and the jury aforesaid upon their oath aforesaid do further find and say that they commute the punishment from a capital offense to confinement in the jail and penitentiary house of this State for the period of ten years."

A rule for a new trial was entered, which, upon argument, was made absolute, and a new trial was granted.

At November Term, 1872, the plaintiff in error was again put on his trial, and the jury rendered a verdict of guilty, commuting the punishment to ten years confinement in the penitentiary.

A rule for a new trial was entered, and on argument was discharged by the court, and judgment was pronounced, from which plaintiff in error appealed to this court.

It appears from the record that on Wednesday, November 20, 1872, a jury was empanelled for the trial of this cause, and respited until the next day and placed in charge of an officer.

On Thursday, November 21st, the jury returned into court, and defendant presented an affidavit stating that "as will appear from an affidavit of March 20, 1872, the Attorney-General agreed to have witness Arthur Bush in attendance, and that on March 26, 1872, the Attorney-General caused a subpœna to be issued for said Bush as a State's witness, which was executed July 3, 1872, and the defendant is taken by surprise that Bush is not in attendance. The affidavit also alleges that there is great prejudice in the county of Sevier against him, and prays for a change of venue, and if this cannot be granted, that the cause be continued.

By reference to the affidavit of March 20, 1872, for continuance, it is shown that the defendant below had the witnesses Bush, Baker, and Colback summoned,

and he states that they are not in attendance, etc.; that the Attorney General agreed to have the attendance of the witness Arthur Bush, and that he is taken by surprise by his non-attendance, etc.

The cause was continued on defendant's affidavit at November Term, 1871. How the continuances to the November Term, 1872, were had, or at whose instance, does not appear; but no application for a continuance was made until after the jury was empanelled at November Term, 1872, then the affidavit above mentioned was filed, and afterwards a second affidavit at the same term, which states he cannot prove certain facts amounting to the defense of *alibi* by any other than the absent witness Bush; that he had had him summoned out of abundant caution to secure his attendance.

He gives no excuse for entering on the trial in his absence; does not swear that he believed he was in attendance or did not know that he was absent. It is not, in fact, alleged in the affidavits of November, 1872, that the Attorney General agreed to have the witness present at that term of the court, but the affidavit states that by a former affidavit of March 20, 1872, it will appear that the Attorney General agreed to have the witness in attendance, and that he had had a subpœna issued for him, which was executed. It appears from the affidavit of March 20 that he applied for an attachment for the witnesses mentioned.

Independently of the affidavit of the Attorney General and prosecutor, we are satisfied no such agreement

14—VOL. 6.

as to the trial term of November, 1872, was made, as it is manifest that the defendant, after the time of the alleged agreement, was depending upon himself and the process of the court to compel the attendance of the witness, and not upon the Attorney General.

He went into trial voluntarily, and made no application for a continuance until after the jury were sworn, and then states no facts amounting to surprise, and the application for continuance was properly denied.

The mere fact that the jury were kept and took their meals at the house of Hammer, who aided the prosecutor in selecting the jury, when no tampering with them is shown or any fact stated showing any intercourse whatever by him with the jury is no ground for setting aside their verdict. Nor is there any thing in the objection made to the charge that it instructs the jury that they had the power to commute his punishment.

The former verdict was no bar to a different punishment by a subsequent verdict.

By the act of May 17, 1865, the stealing of a horse, mule, or ass is punishable with death, but the jury may commute the punishment.

In the case of *Green Turner* v. *The State,* 3 Heis., 452, it was held that the law annexes the death penalty if the verdict is guilty without more. It is not like murder, an offense of different degrees, but one single indivisible offense, for which different degrees of punishment may be inflicted by the jury. And if a conviction is had, and the verdict set aside, and a

new trial granted, it is tried by the second jury just as if there had been no previous trial.

The evidence sustains the verdict of the jury, and there is no error in the record, and the judgment must be affirmed.